IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALBERT UNGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 3:12-cv-1180-DRH-DGW |
| | ) |
| J. S. WALTON, | ) |
| | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge David R. Herndon under 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a).  Before the Court is Petitioner Albert Unger's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 2, 27) and Respondent J.S. Walton's Response (Doc. 18, 27).  For the reasons stated below, it is **RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 2) be **DENIED**, that this action be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On March 4, 2013 the Court held a hearing on the Petition for Writ of Habeas Corpus (Doc. 2).  Attorney Viniyanka Prasad appeared for Petitioner and Attorney David J. Pfeffer appeared for Respondent.  The facts and evidence presented at the hearing and the filings by the parties are as follows:

Petitioner Albert Unger ("Unger") is a federal prisoner of the Bureau of Prisons ("BOP") at the United States Penitentiary in Marion ("USP Marion").  (Doc. 2).  Petitioner pleaded guilty

1

to the underlying offense in this case, theft of government property (postage stamps) in violation of 18 U.S.C. § 641 before the Northern District of Indiana District Court on December 17, 2009. (Doc. 2). On July 9, 2010, the Northern District of Indiana District Court entered judgment finding Unger guilty of one count of theft of government property and sentencing him to a total prison term of twenty-seven months. (Doc. 2). In its judgment, the Northern District of Indiana made the following recommendation to the BOP: "At the defendant's request, the court recommends that the defendant be given credit for time served while awaiting sentencing." (Doc. 2). The judgment was silent as to whether it should run consecutive or concurrent to any future state court sentences. Petitioner is now serving a twenty-seven month federal sentence with a projected release date of April 11, 2014. (Doc. 2).

As indicated by the parties, Unger was detained in Clark County Detention Center ("CCDC") for fifty-nine days after his arrest (August 10, 2009 through October 7, 2009). (Docs. 2, 18). Unger was then transferred to the Northern District of Indiana pursuant to a writ of habeas corpus *ad prosequendum*. (Docs. 2, 18). Unger entered into a plea agreement in the Northern District of Indiana District Court and subsequently pleaded guilty to theft of government property in violation of 18 U.S.C. § 641 on December 17, 2009. (Docs. 2, 18). Unger spent 274 days under the writ awaiting federal sentencing (October 8, 2009 through July 8, 2010). (Docs. 2, 18). On July 9, 2010, he was sentenced by the Northern District of Indiana District Court, and remained in the district pursuant to the writ for seventy-six days (through September 22, 2010). (Docs. 2, 18). Unger was then returned to CCDC where he remained for thirty-four days awaiting sentencing on the Nevada charges (September 23, 2010 through October 26, 2010). (Docs. 2, 18). On October 27, 2010, Unger was sentenced by the Nevada State Court to a minimum of twelve months and a maximum of thirty months to run concurrent

with his federal sentence. (Docs. 2, 18). The Nevada State Court gave Unger 365 days of credit for time served and placed him on probation. (Docs. 2, 18). Unger remained in CCDC for fourteen more days, until he was transferred to Marin County, California to face charges there (October 27, 2010 through November 9, 2010). (Docs. 2, 18). The entire period of August 10, 2009 through November 9, 2010 includes a total of 457 days. (Doc. 18).

Petitioner filed the instant petition on November 16, 2012 (Doc. 2), raising one ground for relief, namely, that he is entitled to sentence credit for the 365 days for his pre-sentence custody at the CCDC in Nevada, between August 10, 2009 and August 10 2010. (Doc. 2). Petitioner claims that the Nevada State Court ordered that the state sentence run concurrently with the federal sentence and that the Northern District of Indiana recommended to the BOP that he be given credit for "time served" while awaiting sentencing (the 365 days). (Doc. 2). The BOP only credited Petitioner with ninety-two days of "time served." (Doc. 2-2). Petitioner contends that he will be eligible for release from USP Marion as of April 11, 2013 if his requested relief is granted. (Doc. 2). Respondent argues that the petition should be denied because Petitioner failed to exhaust his administrative remedies, and even if he had exhausted, he is not entitled to any credit to his federal sentence. (Doc. 18).

### CONCLUSIONS OF LAW

#### I. Petitioner Concedes that He Failed to Exhaust His Administrative Remedies

The Supreme Court has held that credit to a federal sentence on the basis of time previously served, which is authorized by 18 U.S.C. § 3585(b), cannot be calculated at the time of sentencing. *See United States v. Wilson*, 503 U.S. 329, 334 (1992). Instead, the statute contemplates computation of the credit by the Attorney General after the sentence has commenced. "After a district court sentences a federal offender, the Attorney General, through

3

the [BOP], has the responsibility for administering the sentence." *Id.* at 335. Requests for sentence credit for time previously served must be made initially through the BOP's administrative channels, which are governed by federal regulation. *Id.* Prisoners may seek judicial review of the BOP computation in a district court only "after exhausting their administrative remedies." *Id.*; s*ee also Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000) (finding that requests for credit to a sentence or recalculation of time served on a federal sentence must be presented to the BOP for review prior to the filing of an action under 28 U.S.C. § 2241).

While it is true that, unlike § 2254, § 2241 does not itself require exhaustion of available state remedies, federal courts may nevertheless require it as a matter of comity. *Boettcher v. Doyle*, 105 Fed. Appx. 852, 854 (7th Cir. 2004). A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not, and although the common law allows exceptions the hurdle is high. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004).

Proper exhaustion requires that an inmate comply with the BOP's rules governing filing and prosecution of a complaint. *Ihmoud v. Jett*, 272 Fed. Appx. 525, 527 (7th Cir. 2008) (finding that merely mailing notices to various prison authorities does not constitute sufficient use of the BOP's administrative process for exhaustion); *see* 28 C.F.R. §§ 542.13–15 (outlining requirements that inmates must first attempt to resolve the issue informally with a staff member, then file a written complaint with the warden, then appeal to the regional director and finally the general counsel).

Here, Petitioner concedes that he did not exhaust his administrative remedies according to the BOP's procedures. Unger attempted an informal resolution of his administrative remedies by submitting a form BP-8 to his Counselor. The Counselor provided Unger with a written

4

response to his BP-8 request. Petitioner failed to take further steps in the process. Additionally, Petitioner's attorney sent a letter to the BOP Regional Director on December 1, 2011. Petitioner's letter does not amount to a "Request" under the BOP's procedures. Even if this were construed as a "Request," Petitioner concedes that he at least failed to complete the process by failing to file an "Appeal" of that "Request." Thus, Petitioner is barred from pursuing his writ of habeas corpus unless he can establish that one of the exhaustion exceptions is applicable to his case.

## II. Petitioner May Not Avail Himself of the Exhaustion Exceptions

Petitioner argues that he should be excused from exhausting his administrative remedies under at least one of the applicable exceptions. The exhaustion requirement may be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004); *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002). Petitioner fails to show that either of the exceptions is applicable to his claim.

### A. The Prejudice Exception to Exhaustion Is Inapplicable

"[R]equiring [that a petitioner] resort to the administrative remedy [of exhaustion] may occasion undue prejudice to subsequent assertion of a court action." *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992). Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action. *Id.*

Petitioner argues that his claim for a re-computation of his sentence required immediate review and a faster determination than the BOP could provide. He argues that if there were a

decision in his favor he would be immediately eligible for halfway house consideration as well as a release in April 2013. The BOP's administrative remedy program sets forth specific response times for each stage of the process. "Once [a Request or Appeal is] filed, response shall be made by the Warden or CCM within [twenty] calendar days; by the Regional Director within [thirty] calendar days; and by the General Counsel within [forty] calendar days." 28 C.F.R. § 542.18. Also, "if the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Petitioner's attorney sent a letter to the BOP Regional Director on December 1, 2011. Petitioner argues that this letter was sufficient to be considered a "Request" and to begin the process of exhaustion. Petitioner's letter does not amount to a "Request" under the BOP's procedures. Even if this were construed as a "Request," Petitioner concedes that he at least failed to complete the process by failing to file an "Appeal" of that "Request." The BOP process sets forth specific and definite time limits for each stage of its administrative remedy process, inclusive of situations where the BOP fails to respond or where an emergency exists. If Petitioner followed every step of the process and only received a response at the outer time limits for each stage, he could reasonably have exhausted his administrative remedies in approximately ninety days. Because the Petitioner could have availed himself of the BOP's administrative remedy process, which provides definite time limits at each stage, he cannot claim prejudice.

### B. The Redressability Exception to Exhaustion Is Inapplicable

Turning to the exception of redressability, a party is not required to seek relief from an administrative agency (before seeking it from a federal court) if the agency does not have the power to redress a claim in the way the complainant requests. *Gibson v. Brown*, 137 F.3d 992,

995 (7th Cir. 1998). In other words, while an administrative agency may be "competent to adjudicate the issue presented," exhaustion is not required if it "lacks authority to grant the type of relief requested." *Id.*

The BOP does have the authority to grant the type of relief requested by Petitioner, which is to analyze a sentence and make a determination about how long the sentence needs to run in light of the federal sentence. *Setser v. United States*, 132 S. Ct. 1463, 1473 (2012).

> "That a sentence is thwarted does not mean that it was unreasonable. . . . There will often be late-onset facts that materially alter a prisoner's position and that make it difficult, or even impossible, to implement his sentence. This is where the [BOP] comes in—which ultimately has to determine how long the District Court's sentence authorizes it to continue [a petitioner's] confinement."

*Id.* A petitioner is free to urge the BOP to credit his time served for a state court sentence based on a District Court's judgment that the federal sentence run concurrently with the state sentence. A petitioner "may raise his claim through the [BOP's] Administrative Remedy Program. And if that doesn't work, he may seek a writ of habeas corpus." *Id.*

Because the BOP has the discretion to determine how long the District Court's sentence authorizes it to continue a petitioner's confinement, the BOP has the authority to grant the type of relief that Petitioner Unger requests in this case.

### C. The Futility Exception to Exhaustion Is Inapplicable

Next, Petitioner is unable to satisfy the futility exception. The futility exception is met only when there is "no reasonable prospect that [the petitioner] could obtain any relief" before the administrative agency. *Al-Siddiqi v. Nehls*, 521 F. Supp. 2d 870, 877 (E.D. Wis. 2007); *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("Exhaustion concerns apply with particular force . . . when the agency proceedings in question allow the agency to apply its special expertise.").

Petitioner's subjective belief that further appeal through the administrative process was useless is incorrect. "One purpose behind requiring exhaustion of administrative remedies, including the appeal process, is to provide officials the opportunity to reach final determinations on relevant issues and to catch any mistakes or correct any errors without having to resort to litigation." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004) ("The Supreme Court has set out two purposes for exhaustion: protecting administrative agency authority and promoting judicial efficiency.").

Petitioner raises no reasons why there would be a predetermined response to his request. In fact, the opposite appears true. In Petitioner's request for an administrative remedy, he asked for reconsideration of his entitlement to a twelve-month pre-release placement in a halfway house. Utilization of the administrative remedy process would have given the BOP an opportunity to correct its errors, if any, in the computation of his sentence. Petitioner's failure to exhaust his available administrative remedies denied prison officials the chance to issue a final determination regarding Petitioner's issue. Before petitioner may obtain relief in this court, he must give the prison officials that chance by completing the administrative grievance process set forth in 28 C.F.R. §§ 542.10–19.

### D. The Substantial Constitutional Questions Exception to Exhaustion Is Inapplicable

Finally, Petitioner is unable to satisfy the substantial constitutional exception. An exception to the exhaustion requirement has been carved out for constitutional challenges to Agency procedures because the BOP has no jurisdiction to adjudicate constitutional issues. *Gonzalez*, 355 F.3d at 1017. Although his ultimate challenge is constitutional, the premise of his constitutional argument is statutory. Petitioner argues that to allow the BOP discretion in

determining how long the District Court's sentence authorizes it to continue a petitioner's confinement, essentially allows the BOP unfettered sentencing authority. Petitioner argues that this sentencing authority erodes the procedural protections afforded to a criminal defendant for determination of any deprivation of his liberty in violation of the United States Constitution.

The BOP, however, does not have unfettered discretion in its designation decisions because it is required to follow the directives in 18 U.S.C. § 3584(a). "For example, if the district court imposes multiple terms of imprisonment at the same time, but fails to address the concurrent-vs.-consecutive issue, the terms 'run concurrently,' § 3584(a), and the Bureau is not free to use its 'place of imprisonment' authority to achieve a different result." *Setser v. United States*, 132 S. Ct. 1463, 1469 (2012). Although, as noted above, the BOP does have some discretion in determining how long the district court's sentence authorizes it to continue a petitioner's confinement, the BOP does not have what amounts to unfettered sentencing authority. *Id.* at 1469–70.

### III. Even if the Court Finds that Petitioner Exhausted His Administrative Remedies, His Petition Fails on the Merits

The Attorney General, acting through BOP, has the responsibility for administering a defendant's sentence. *Jones v. Winn*, 13 Fed. Appx. 419, 420 (7th Cir. 2001); *United States v. Wilson*, 503 U.S. 329, 335 (1992); 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed."). In fulfilling this duty, BOP calculates the prisoner's sentence, including determining as an administrative matter any applicable credits. *Jones*, 13 Fed. Appx. at 420. Federal courts have the authority to adjudicate issues of law surrounding that determination when presented in a petition for writ of habeas corpus after exhaustion of administrative

remedies. *Id.*; s*ee United States v. Jones*, 34 F.3d 495, 499 (7th Cir. 1994). Federal courts review the BOP's actions deferentially. *Jones*, 13 Fed. Appx. at 420.

### A. The BOP Acted Within Its Authority in Calculating Petitioner's Time Served

Unger first argues that the BOP should have credited him for presentence jail time beginning with his arrest by Nevada law enforcement on August 10, 2009, up to August 9, 2010. Unger received ninety-two days of credit for the period between August 10, 2010 and November 9, 2010, which the Respondent states includes all pre-sentence custody time that was not already credited toward the Nevada State Court's sentence. BOP had no statutory authority to credit Unger for any additional days, beyond the ninety-two days, because Nevada authorities had already credited the prior 365 days against his state sentence. *See* 18 U.S.C. § 3585(b); *Jones*, 13 Fed. Appx. at 420–21; *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000). "[Section] 3585(b) forbids the BOP from giving credit for time served when that credit has already been applied against another sentence." *Jones*, 13 Fed. Appx. at 420–21. The Nevada State Court applied 365 of the days Unger was jailed before his federal court sentencing against his state term, and the BOP gave him credit for the additional ninety-two days. Unger thus received all the credit to which he was entitled.

### B. A Retroactive *Nunc Pro Tunc* Designation of the Nevada State Prison Would Not Aid Petitioner

Even if a *nunc pro tunc* order is granted in favor of Petitioner, it would be of no benefit to him. Unger argues that, because the state court ordered its sentence to run concurrently with the previously imposed federal sentences, the BOP should have calculated his federal sentences to run concurrently so as to carry out the state court's intention. Unger insists that, to effect this result, the BOP should have deemed his federal sentence to have started running on the date of

10

his arrest (August 9, 2009), and should also have granted him a *nunc pro tunc* designation of the state prison as the place of service of his federal sentence.

Generally, a prison sentence "commences on the date the defendant is received in custody . . . [at] the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Under the BOP Program Statement 5160.05, "By action of a *nunc pro tunc* order, the Federal sentence may commence on the date of its imposition or on a subsequent date that will not cause the inmate to be a late release by virtue of the *nunc pro tunc* order." PS 5160.05, p.8 ¶ 7.

Petitioner's federal sentence was imposed on July 9, 2010. If Petitioner's requested *nunc pro tunc* order were granted, he would be entitled to prior custody credit for the period between August 9, 2009 and July 8, 2010. This would amount to 333 days, all of which is accounted for in the prior custody credit already granted to Petitioner by the Nevada State Court against his state sentence. As mentioned above, "§ 3585(b) forbids the BOP from giving credit for time served when that credit has already been applied against another sentence." *Jones*, 13 Fed. Appx. at 420–21. Thus, pursuant to § 3585(b), Petitioner still would not be entitled to any additional credit for time served because he already received credit against his state sentence.

## CONCLUSION

Unger conceded that he did not exhaust his administrative remedies in this case and is unable to show that any of the exceptions to exhaustion is applicable to his claim. The law is clear that he must exhaust his administrative remedies before bringing his claim. Until the administrative process has been completed, the district court has no determination to make under the statute. Even if the Court were to reach the merits of the claim, the Petitioner's claim fails because the BOP acted within its authority. The BOP has no statutory authority to grant credit

for time served that has already been applied against another sentence. Here, the Nevada State Court already credited Petitioner 365 days on his state sentence. Finally, The BOP's computation would not change to benefit Petitioner even if it granted Petitioner a retroactive *nunc pro tunc* designation of the state prison and allowed his sentence to run as of the date of his arrest because Petitioner already received credit for this time against his Nevada State Court sentence.

For the foregoing reasons, it is **RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 2) be **DENIED**, that this action be **DISMISSED**, and that the Court adopt the above findings of fact and conclusions of law.

**DATED: March 11, 2013**

        **DONALD G. WILKERSON**
        **United States Magistrate Judge**