IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALBERT UNGER,

    Petitioner,

v.                 No. 12-cv-1180-DRH-DGW

J. S. WALTON,

    Respondent.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

This matter comes before the Court on a Report and Recommendation (the "Report") (Doc. 29). Unger objects to the Report (Doc. 32) and the Government has responded to his objections (Doc. 33). Based on the following, the Court **ADOPTS** the Report in its entirety.

Unger, a federal prisoner currently incarcrerated at the United States Penitentiary (USP) in Marion, Illinois, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of the Bureau of Prisons' (BOP) designation of a federal facility for service of his federal sentence which, he argues, resulted in a denial of credit for 365 days of time spent in a county facility prior to commencement of his federal sentence. Specifically, Unger argues the actions of the BOP rendered his state and federal sentences consecutive in violation of his constitutional rights.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Donald G. Wilkerson submitted a Report on March 11, 2013 (Doc. 29). The Report recommends that this Court deny and dismiss Unger's petition for writ of habeas corpus. The Report was sent to the attorneys of record and to Unger with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the report. Because timely objections have been filed, the Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B). The Court may "accept, reject, or modify the recommended decision." *Willis v. Caterpillar Inc.,* 199 F.3d 902, 904 (7th Cir. 1999). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.*

## II. Facts

Unger was arrested on August 10, 2009, by local authorities in Las Vegas, Nevada on state charges and during this time, he was detained in Clark County Detention Center ("CCDC"). On October, 8, 2009, the U.S. Marshals "borrowed" Unger pursuant to a writ of habeas corpus *ad prosequendum*[1] in regards to federal charges pending in the United States District Court for the Northern District of Indiana. Unger plead guilty to the federal charge and on July 9, 2010, he was sentenced to 27 months of imprisonment. The judgment did not state

---

[1] In *Jake v. Herschberger,* the Seventh Circuit explained that a writ of habeas corpus *ad prosequendum* permits the receiving sovereign to borrow temporarily a person in the custody of the sending sovereign for the purpose of prosecuting the prisoner. *Jake v. Herschberger,* 173 F.3d 1059, 1061 n. 1 (7th Cir. 1999). The Court went on to say that the prisoner remains under the jurisdiction of the sending sovereign and is considered to be in the custody of the sending sovereign, not the receiving sovereign. *Id.* In the present case, Unger remained in Nevada's custody (the sending sovereign) while being borrowed by the Northern District of Indiana (the receiving sovereign).

whether his sentence should run consecutive or concurrent to future state sentences.

On September 23, 2010, Unger returned to CCDC to face the Nevada Charges. On October 27, 2010, the State of Nevada sentenced Unger to "365 Days Credit for time served, CONCURRENT with [his federal sentence]" and placed him on probation (Doc. 18-1 at Att. 6).

On November 10, 2010, Unger was transferred to the custody of local authorities in Marian County, California to face pending charges, and on February 23, 2011, he was sentenced to a term of three years, consecutive to any other sentence. While serving that sentence, Unger was sentenced for other charges pending in California and Colorado.

On July 5, 2011, Unger filed a letter asking the federal sentencing court to recalculate his federal sentence in order to credit him with time served in Nevada. The Court interpreted Unger's letter as a motion to correct his judgment or to review the BOP's computation of his credits for time served awaiting sentencing, and the motion was denied. The Court explained, "[i]t is the Attorney General, through the BOP, that computes credit for time served, not the sentencing court" (Doc. 18-3 at 7). The Court also noted that Unger must exhaust his administrative remedies with the Attorney General in order to seek review of the BOP's computation of his credits.

On December 1, 2011, while Unger remained incarcerated in California, Unger's attorney sent a letter to BOP's North Central Regional Office requesting

CCDC to be retroactively designated as the facility where Unger's federal sentence commenced.[2] Unger's attorney also contacted the BOP's Designation and Sentence Computation Center ("DSCC") prior to Unger's entry into federal custody. Unger contends he never received a response to his request.

On July 17, 2012, and August 20, 2012, Unger filed additional letters with the federal sentencing court requesting credit towards his federal sentence. The Court interpreted the letters as motions to correct Unger's judgment or to review the BOP's computation of his credits for time served, and the motions were denied. In making the decision, the Court explained the proper procedure for exhausting administrative remedies,[3] and further stated that it was not clear if the administrative remedies process even applied in this case, but even assuming that it did, Unger's motion must be denied because the record contained no indication that Unger brought the Regional Office's lack of response to the next level of administrative review, that being the General Counsel.

On July 27, 2012, Unger was received into federal primary custody to begin service of his federal sentence. On October 1, 2012, Unger was transferred to the Federal Prison Camp at USP-Marion, at which time he filed a Form BP-8 with his

---

[2] This designation request is also known as a *nunc pro tunc* designation request.

[3] The process for seeking administrative review of prisoner grievances has four levels: (1) seeking informal resolution with a staff member; (2) submitting a grievance to the prisoner's Warden on a "BP-9" form; (3) appealing to the appropriate Regional Director on a "BP-10" form within 20 days of the date the Warden signed the response to the grievance; and (4) appealing to the General Counsel of the Central Office, located in Washington, D.C., on a "BP-11" form within 30 days of the date the Regional Director signed the response to the appeal. 28 C.F.R. §§ 542.13-15. Finally, an inmate who does not receive a timely reply to a grievance may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18. Regional Directors are required to respond to an inmate grievance within 30 days from the filing of a request or an appeal, and the General Counsel is required to do the same within 40 days. 28 C.F.R. § 542.18.

Correctional Counsel regarding his sentence calculation. Unger received a written response to his Form BP-8, but never pursued any further review as outlined by the BOP's Administrative Remedy Program. However, Unger was notified that he received 92 days of prior custody credit towards his sentence, but his request for *nunc pro tunc* designation was not granted. On November 16, 2012, Unger filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### III.     Analysis

Unger raises a number of objections to the Report and the Court will address each in turn. As a preliminary matter, the Court notes that petitioner labeled an initial section "Objections to the Factual Findings" wherein petitioner objected to the Report's finding that Unger failed to exhaust his administrative remedies and provided the Court with "clarified and additional facts" relating to these objections. While these facts do not appear to be new, the Court will address them as they relate to more specific objections.

**A. Exhaustion of Administrative Remedies**

Petitioner objects to the Report's finding that he failed to exhaust his administrative remedies. In the alternative, petitioner asserts that his failure to exhaust should be excused.

**a. Exhaustion**

Petitioner specifically objects to the Report's finding that "his December 2011 request for *nunc pro tunc* designation 'does not amount to a 'Request' under the BOP's procedures'" (Doc. 32 at 6 quoting the Report at 5). He also objects to

the factual finding that he failed to take any further steps in the Administrative Remedy Program beyond use of informal resolution.

The Seventh Circuit requires an inmate to exhaust administrative remedies prior to bringing a petition for writ of habeas corpus under 28 U.S.C. § 2241. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). Under 28 C.F.R. § 542.10(b), the Administrative Remedy Program does not apply when an individual is confined in a non-federal facility. However, BOP's Program Statement 5160.05 (hereinafter the "Program Statement"), as petitioner correctly notes, contemplates requests by inmates at state institutions. Specifically, it states, a *nunc pro tunc* designation request "will be considered regardless of whether the inmate is physically located in either a federal or state institution." Prog. Stat. at 6.

When petitioner sent the letter in December 2011, he was still in state custody. Therefore the Administrative Remedy Program does not apply according to 28 C.F.R. § 542.10(b) and his letter does not amount to a "Request," as indicated in the Report. Even if the Court were to accept this letter as a formal request, petitioner failed to exhaust his administrative remedies when he did not appeal its denial to the General Counsel's Office. Further, petitioner conceded that he did not engage in the BOP's administrative remedy process.

Petitioner next argues that if the Court determines that the letter is not a formal request and therefore outside the Administrative Remedies Program, then the Program's appeal procedure would not apply. Petitioner asserts that the initial denial of the letter, DSCC's nonresponse, constitutes full exhaustion of his

administrative remedies as petitioner's letter "fulfills all requirements Program Statement 5160.05" (Doc. 32 at 7). However, fulfilling the requirements of Program Statement 5160 is not the same as exhausting administrative remedies. While technically not a part of the Administrative Remedies Program, the Court cannot ignore the fact that administrative remedies were available to the petitioner. The purpose of exhaustion, including the appeal process, is to provide officials the opportunity to reach final determinations on relevant issues and to catch any mistakes or correct any errors without having to resort to litigation. *Gonzalez*, 355 F.3d at 1017. Petitioner failed to give the BOP an opportunity to review its decision, most logically by filing an appeal to the General Counsel's Office.

Therefore, the Court agrees with the Report's determination that petitioner failed to exhaust his administrative remedies.

**b. Exceptions**

Petitioner next asserts that if the Court finds that he failed to exhaust his administrative remedies, the exhaustion requirement should be excused in his case. The exhaustion requirement may be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.
>
> *Gonzalez v. O'Connell,* 355 F.3d 1010, 1016 (7th Cir. 2004).

Petitioner generally objects that "[t]he Report fails to 'balance the individual and institutional interests involved including the nature of the claim presented and the characteristics of the particular administrative procedure provided'" (Doc. 32 at 8). Thereafter petitioner addresses three potential exceptions: (1) futility, (2) unjust delay, and (3) substantial constitutional question.

### i. Futility

Petitioner argues that "[r]eview of the agency procedures and the structure of the BOP reveals that the agency's authority will not be diminished by judicial review at this stage and further that additional review from within the agency is futile for the Petitioner." (*Id.* at 9) Specifically, petitioner claims that because the DSCC reviewed his December 2011 letter and would have reviewed an appeal of his BOP request first made in October 2012, "no more 'complete record' or further 'agency expertise' can be gained by further review from within the BOP" (*Id.* at 10 quoting *Gonzalez,* 355 F.3d at 1018).

The futility exception is met only "if there is no reasonable prospect that [the petitioner] could obtain any relief" by pursing an appeal through the administrative agency. *Gonzalez,* 355 F.3d at 1016-17. Petitioner asserts that Judge James T. Moody's recommendation will continue to play a "vital role" in BOP's determination and, therefore, "there is nothing to indicate that the BOP will change its position" (Doc. 32 at 10). However, "[n]o one can *know* whether administrative requests will be futile; the only way to find out is to try." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999) (emphasis in

original). Petitioner deprived the BOP of a full opportunity to review his claim by failing to follow the administrative remedy procedures, up to and including an appeal to the General Counsel's Office.

### ii. Unjust Delay

Petitioner's next objection is that requiring exhaustion of administrative remedies causes prejudice, due to an unreasonable delay. Petitioner contends that "[t]he Report incorrectly disregards the further prejudice to the Petitioner stemming from the length of time required to complete the administrative remedies program" (Doc. 32 at 10). Ultimately, petitioner suggests that if he engaged in the administrative remedies process, the BOP may not have been able to complete its full review prior to his preferred release date.

The Court agrees with the Report's assessment that the petitioner could have reasonably exhausted his remedies in approximately ninety days. Furthermore, petitioner began serving his federal sentence on July 27, 2012, at which time he could have sought administrative review. Instead, petitioner waited until October to start the process and fails to provide the Court with any justification for his own delay. "A prisoner cannot manufacture exigency by tarrying." *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). As in *Richmond*, the Court cannot see how this delay is anything but Unger's "fault." *Id.*

### iii. Substantial Constitutional Question

Petitioner next asserts that he should be excused from administrative exhaustion because the Report "fails to consider the Petitioner's challenge under

the Fifth Amendment's Due Process clause" and challenges the BOP's designation procedure (Doc. 32 at 12). Petitioner specifically takes exception to the BOP seeking the sentencing court's input with respect to his *nunc pro tunc* request as he believes it to be an exercise of judicial sentencing authority through *ex parte* contact (Doc. 32 at 12 &15).

However, BOP did not overstep its authority when it requested guidance from the sentencing court. According to 18 U.S.C. § 3621(b), when designating the place of a prisoner's imprisonment, the BOP is to consider:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
**(4) any statement by the court that imposed sentence—**
   **(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or**
   **(B) recommending a type of penal or correctional facility as appropriate;** and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28. (emphasis added).

Program Statement 5160.05, section 9(b)(4)(c), incorporates 18 U.S.C. § 3621(b) as well as *Barden* and requires the Regional Inmate Systems Administrator to send a letter to the sentencing court inquiring whether the court has any objections. While the BOP must "solicit the view of the sentencing judge whenever possible, his decision is not controlling . . . ." *Barden v. Keohane*, 921 F.2d 476, 483 (3d Cir. 1991).

Furthermore, the BOP's request for a judge's non-binding recommendation is exactly what it seems, non-binding. The BOP may consider what the judge recommends, but is not required to follow that recommendation. Because the

recommendation of the judge is not binding, it cannot be considered as modifying an inmate's sentence. The BOP's request is not an *ex parte* sentencing procedure. On the contrary, it is a permissible component of 18 U.S.C. 3621(b)(4)(A), which allows the BOP to review the position of the sentencing judge when determining a designation request. Simply put, asking for the sentencing judge's non-binding input when determining a request for *nunc pro tunc* designation is an appropriate exercise of Congress's grant of authority under § 3621(b).

Petitioner additionally asserts that Article IV, Section 1 of the U.S. Constitution has been violated because the BOP failed to give full faith and credit to the ruling of the state sentencing court of Nevada, which noted that Unger's state sentence should be served concurrently with his federal sentence. (Doc. 32, p. 13 & 17). However, a state court does not have the jurisdiction to alter a federal sentence. *See Setser v. U.S.,* 132 S.Ct. 1463, 1471 (2012); *Jake v. Herschberger,* 173 F.3d 1059, 1065 (7th Cir. 1999). Moreover, Petitioner admits in his objection to the R&R that "[t]he Nevada court cannot control administration of the federal sentence" (Doc. 32, p. 17). Thus, the BOP was under no obligation to give effect to the state sentence and there was no constitutional violation.

Therefore, petitioner fails to meet an exception to the exhaustion requirements. Nonetheless, the Court will address the merits of petitioner's claim.

### B. *Nunc Pro Tunc* Designation

Petitioner's final objection to the Report is that "[t]he Report's calculation of the effect of a *nunc pro tunc* designation is incorrect and does not incorporate the effect of an earlier commencement date of Petitioner's sentence" (Doc. 32 at 13). Specifically, petitioner argues that his commencement date should be August 10, 2009, the day he was taken into custody in Nevada. However, this date predates his federal sentencing on July 9, 2010. A sentence may not commence prior to its imposition. *Short v. Revell*, 152 Fed. Appx. 542, 544 (7th Cir. 2005) (citing *United States v. Walker*, 98 F.3d 944, 945-46 (7th Cir. 1996)).

In the alternative, petitioner suggests that his sentence should commence on July 9, 2010. Petitioner asserts that if this date is used, he would be entitled to an additional 216 days served towards his federal sentence. However, petitioner has already been credited this time. Petitioner's Nevada sentence was imposed on August 10, 2009, and his sentence terminated on August 10, 2010. The state court credited 365 days of time served towards his state sentence. Section 3585(b) provides that time spent in official detention prior to the commencement of a sentence is to be awarded only if that time has not already been credited against another sentence. 18 U.S.C. § 3585(b). The period of time from August 2010 through November 9, 2010 accounts for the 92 days the BOP previously awarded petitioner. Therefore, the Report is correct in its analysis that a retroactive *nunc pro tunc* designation would not benefit petitioner.

## IV. Conclusion

For the reasons discussed herein, the Court **ADOPTS** the findings of the Report (Doc. 29) over Unger's objections (Doc. 32). Thus, Unger's petition is **DENIED** in its entirety and Unger's claims are **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

Signed this 26th day of November, 2013.

Digitally signed by David R. Herndon
Date: 2013.11.26 14:30:11 -06'00'

**Chief Judge
United States District Court**